IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **3:CV-06-2052** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA and | : | |
| KAREN F. HOGSTEN, et al., | : | |
| | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

### I. Background.

Plaintiff, Johnny Cyrus, an inmate at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania ("FCI-Allenwood"), filed, *pro se*, the instant civil rights action under *Bivens*,[1] pursuant to 28 U.S.C. § 1331, on October 19, 2006. The Plaintiff has also filed two applications for leave to proceed *in forma pauperis*. (Docs. 2 & 5).[2] The Complaint consists of five handwritten pages, including two pages of the Statement of Facts.

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971). Plaintiff has recently filed four other actions with this Court, namely 06-1698, 06-1665, 06-1697 and 06-2022, M.D. Pa.

Plaintiff incorrectly styles his present action as being also under § 1983. (Doc. 1, p. 1). However, a § 1983 civil rights suit is against state officials and not federal officials of the Bureau of Prisons ("BOP"), as Plaintiff is naming in this case. *See Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

[2]We shall recommend that Plaintiff's Motions for *in forma pauperis* be granted for purposes of filing this action. (Docs. 2 and 5).

As stated, Plaintiff's Complaint is made up of five handwritten pages. *See* Doc. 1.[3]  The Complaint alleges that on August 3, 2006, Plaintiff was sent to the SHU.  He avers that he packed three full bags with his personal property.  His cell door was then locked by a Corrections Officer ("CO").  Plaintiff was taken to the SHU, where he remained confined until August 8, 2006.  (Doc. 1, p. 2).  Plaintiff avers that "[i]n retaliation, these [unnamed] officers gave me a half of a bag of [my] property. No forms to sign for my property."  Plaintiff avers that he asked where the remainder of his property was and "the officer stated, 'just get hell out of here, asshole."  Plaintiff states that after he left the SHU, everything he owned was gone from his bag.  Plaintiff claims that 'the officers deliberately lost or threw my personal property away." (*Id*.).

Plaintiff avers that on the day of his release from the SHU and discovery of his missing property, *i.e.* August 8, 2006, he went to Defendant Warden Hogsten and "gave her a filing [grievance] on my property." (*Id*.,pp. 2-3).  Plaintiff states that Warden Hogsten gave his filing to

---

[3]In his handwritten  Complaint, the Plaintiff indicates that he has not fully exhausted the grievance procedure available at FCI-Allenwood.  (Doc. 1, p. 1).  It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo*, 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D. Pa.)("The PLRA mandates that inmates 'properly' exhaust  administrative remedies before filing suit  in federal court.")(citation omitted).  Further, the Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

Plaintiff's claim arose on August 8,  2006.  He admits  that he did not exhaust all of his available BOP Administrative remedies before he filed this action.  Plaintiff is well aware of the PLRA exhaustion requirement based on our screening of his four prior cases he has filed with this Court.

Captain Feltman, and he gave it to the SHU Lieutenant, Defendant Wolmendorf.  Plaintiff then states that he never heard from anyone about his missing personal property or his grievance. Plaintiff filed three tort claims pursuant to the FTCA, and states that he never received an answer.

Plaintiff admits that "not too long ago, I received my property from another jail."  Plaintiff states that he never left FCI-Allenwoood and seems to inquire how his property could have been sent to another prison.  Plaintiff indicates that he received all of his missing personal property back except for his family photos and his album book.  Plaintiff seems to conclude  that his photos and album book were thrown away by unnamed prison staff as retaliation.  (*Id.*, pp. 3-4).  Plaintiff states that prison staff deliberately lost or threw away his photos and photo album book.  Thus, Plaintiff raises a First Amendment retaliation claim and a Fifth Amendment due process  deprivation  of property claim.

Plaintiff avers that retaliation was the reason why his personal property was missing from August 8, 2006, until just recently, and why his photos and album book were thrown away. Plaintiff does not name the staff members who allegedly threw away his stated property as Defendants herein, and he does not specifically state why they were retaliating against him.

Plaintiff names as Defendants the United States, Warden Hogsten and Lt. Wolmendorf.  The stated two individual Defendants are both employed at FCI-Allenwood.

Defendants Hogsten and Wolmendorf are not alleged to have played any role in the losing or throwing away of any of Plaintiff's personal property on August 8, 2006, or to have engaged in any conduct amounting to a violation of Plaintiff's First and Fifth Amendment Constitutional rights. Plaintiff only claims that he gave  Defendant Hogsten his grievance and she gave it to the Captain,

3

who in turn gave it to Lt. Wolmendorf, and that he received no response.  Also, as to Defendant Warden Hogsten, Plaintiff only avers that he gave this Defendant his grievance, that she passed it on to her subordinates, and that he received no response.   Plaintiff does not state the personal involvement of either Defendant Hogsten or Defendant Wolmendorf with respect to his Fifth Amendment due process deprivation of property claim or with respect to his First Amendment retaliation claim.   Rather, both of these Defendants appeared to be named in this case based on *respondeat superior*.   Further, as we have repeatedly indicated in our prior Reports and Recommendations screening Plaintiff's other recently filed cases, the United States is not a proper Defendant in a *Bivens* action.

The Complaint does not sufficiently specify any conduct, wrongful or otherwise, of Defendants Wolmendorf and Hogsten.  These Defendants are not alleged to have played any role in the alleged retaliatory losing and throwing away of Plaintiff's personal property or to have played any role in the deprivation of his album book and photos after the return of his other property. Nor are these Defendants alleged to have been aware at the time of the incident that the prison staff was deliberately taking and losing or throwing Plaintiff's personal property.  Plaintiff alleges only that he gave his grievance about his missing property to Defendant Hogsten and that it was then given to Defendant Wolmendorf, and that they did not respond to it.  Of course, Plaintiff admits that he received all of his property back except for the photos and album book.  Plaintiff does not state that Defendants Wolmendorf and Hogsten were ever aware that the other prison staff members were retaliating against him by losing or throwing away his personal property at any time.

As relief, Plaintiff seeks compensatory damages in the amount of "$10,000,00. (Sic)"

Plaintiff also seeks money damages for pain and suffering and mental anguish[4], or "$5,000,00. (sic)

and his property back, or "$2,000,00. (Sic)" and his photo album back.  (*Id.*, p. 5).[5]

## II. PLRA.

We now review the Plaintiff's pleading and find that it contains fatal deficiencies as to the

Defendants, namely the failure to state Fifth Amendment due process deprivation of property

claim and a First Amendment retaliation claim against Defendants Wolmendorf and Hogsten.  We

find that the Defendant United States cannot be named in this *Bivens* action.  We also find that it

would be futile to allow Plaintiff to amend his *Bivens* Complaint to name the staff members whom

he alleges deliberately threw away or lost his personal property on August 8, 2006, and to state the

staff members at the prison whom he alleges are retaliating against him, since he fails to state a

constitutional claim.  Plaintiff's claim for his lost property should be filed as an action under the

---

[4]Plaintiff only alleges mental injury.  However, damages for this claim are precluded since he has not alleged physical  injury.  *See* 42 U.S.C. § 1997e(e).  The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury.  Here, the Plaintiff fails to claim physical injury.  Thus, a claim for money damages for mental anguish is precluded. *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251( 3d Cir. 2000).

[5]As we have noted in Plaintiff's previous actions, Plaintiff's request for a specific amount of monetary damages should be stricken.  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests  for specific monetary damages of "$10,000,00", "$5,000,00" and $2,000,00" should be stricken from his  Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

FTCA, 28 U.S.C. §§ 1346, 2671, *et seq.*, against the United States after he exhausts his tort claim (SF-95) with the BOP.

As stated, the Plaintiff has filed two applications to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Prison Litigation Reform Act of 1995,[6] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[7] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we have determined that the Plaintiff is unable to maintain this *Bivens* action as against Defendants United States, Wolmendorf and Hogsten. We find that Plaintiff should file an FTCA action against the United States for money damages for his lost album book and photos.

---

[6] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[7] The Plaintiff completed two applications to proceed *in forma pauperis* and authorization to have funds deducted from his prison accounts. The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account. (Docs. 2, 5, 6 and 7).

### III. Section 1331 Standard.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).  A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

### IV. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts

7

which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

## V. Discussion.

In his Complaint, as stated, Plaintiff does not allege any involvement of Defendants Wolmendorf and Hogsten with respect to his lost personal property on August 8, 2006, and with respect to the retaliation being taken against him seemingly as a result of his previous civil rights actions he filed.  As to both Defendants Wolmendorf and Hogsten, Plaintiff only states that they were given his grievance about his missing property and that he received no response from them. Plaintiff does not indicate that either of these two stated supervisory Defendants were involved with the taking and losing or throwing away of his personal property, or that they were involved with the retaliation against him.  As stated, Plaintiff states that all of his property was returned to him except for his photos and album book.[8]  Plaintiff's allegations do not indicate that Defendants Wolmendorf and Hogsten were deliberately losing or throwing away his property or that they were involved in the retaliatory conduct to do so.  Nor do Plaintiff's allegations indicate that either stated Defendant had a causal connection to the claimed retaliatory acts being taken against him.

Also, Plaintiff does not claim that Defendants Wolmendorf and Hogsten retaliated against him or that they threw away his photos and album book.  Plaintiff does not claim that he told Defendants Wolmendorf and Hogsten he was being retaliated against by the staff, and that the staff threw his property away.  In fact, Plaintiff states that he recently received all of his property back

---

[8]While Plaintiff states that he did not receive a response to his August 8, 2006 grievance, he does acknowledge that he received all of his personal property back except for his photos and album book.

8

except for the stated items.  (Doc. 1,  p. 4).  Plaintiff does not claim that Defendants Wolmendorf and Hogsten caused him to be deprived of any of his property or that they refused to return any property to him.  Plaintiff does not claim that these two Defendants were aware at any time that he was being retaliated against or that they had any knowledge that any of the staff was throwing away or losing his property.  The allegations in Plaintiff's Complaint do not support Plaintiff's present Fifth Amendment due process deprivation of property claim and First Amendment retaliation claim as against Defendants Wolmendorf and Hogsten.  Further, Plaintiff's allegations do not show that these Defendants were part of the retaliatory actions being taken against him.

Finally, the Plaintiff has not properly named the responsible prison personnel who were personally involved with his First Amendment claim.  He has also improperly named the United States as a Defendant in this *Bivens* case.  In fact, Plaintiff's claim should be filed as a tort claim under the FTCA after he exhausts his BOP tort claim administrative remedies.

Consequently, based on the present pleading, the Plaintiff has failed to allege a Constitutional  violation by Defendants Wolmendorf and Hogsten.  Plaintiff's case as to these Defendants should be dismissed.

Moreover, Plaintiff does not allege with sufficient specificity the personal involvement of Defendants Wolmendorf and Hogsten, who admittedly did not participate in the retaliatory throwing away of Plaintiff's property, with respect to his First Amendment retaliation claim.  As discussed, Plaintiff does not adequately state what these two Defendants did to violate any of his Constitutional rights.  Liability may only be based upon the Defendant's personal involvement in conduct amounting to a constitutional violation.  *Hampton v. Holmesburg Prison Officials*, 546 F.2d

1077 (3d Cir. 1976); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

Here, Plaintiff does not allege to have suffered any loss of property as a result of the actions of Defendants Wolmendorf and Hogsten.  Plaintiff does not allege that the stated two Defendants retaliated against him or that they were involved in the staff's throwing away of his photos and album book.  Thus, the alleged conduct of these two Defendants does not amount to deliberate taking of Plaintiff's personal property and is not sufficient to constitute an Fifth Amendment violation.  Nor is the conduct of these two Defendants with respect to their alleged failure to respond to Plaintiff's grievance sufficient to hold them liable in this action.  Pursuant to *Rode*, *supra*, the supervisory Defendants cannot be held liable based on *respondeat superior* in this case.  Thus, Defendants Hogsten and Wolmendorf should be dismissed from this case.

Additionally, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

As the Court stated in *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. *Rode, supra.* Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential

liability in any case in which the prisoner merely transmitted correspondence to the official. *Id.*

Thus, several courts have held that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin*, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) (citations omitted); *accord Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints ... does not render [prison officials] personally liable under § 1983."); *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (citations omitted).  The Second Circuit Court has stated that "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro*, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).

Nor has Plaintiff stated a First Amendment retaliation claim against Defendants Hogsten and Wolmendorf.  Plaintiff only alleges that unnamed staff, who are not named as Defendants herein, deliberately lost or threw away his personal property, seemingly in retaliation for his lawsuits.  (Doc. 1, pp. 2-4).  In *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), the Court stated that "a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials."  To establish a retaliation claim, the Plaintiff must also show that there exists a

causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). We find that this nexus does not exist with respect to either of our two supervisory Defendants, Hogsten and Wolmendorf.

Further, the United States is not a Defendant. While the United States has waived sovereign immunity for an FTCA action, it has not waived sovereign immunity for a *Bivens* action. *See Jaffe v. U.S.*, 592 F.2d 712, 717-18 (3d Cir.), *cert. denied,* 441 U.S. 961 (1979) (no waiver of United States' sovereign immunity for suits alleging constitutional violations). Thus, Plaintiff improperly named the United States with respect to his *Bivens* Complaint.

The United States has not waived its sovereign immunity for a *Bivens* action, and it is not a proper Defendant in a *Bivens* action. *See FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 999 (1994); *Alexander v. Hargrove*, 1995 WL 144636, E.D. Pa.; *Howard v. U.S.*, 2000 WL 128701, E.D. Pa.; *see also Jaffee, supra.; Aladiem v. HUD*, 199 WL 718069, E.D. Pa. Further, to the extent that Plaintiff's *Bivens* action is against any federal prison official in his official capacity and seeks monetary damages, it is basically a claim against the United States.[9] Thus, Defendant United States

---

[9]As this Court stated in *Arrington v. Inch*, 2006 WL 860961, * 4 (M.D. Pa.):

> "The doctrine of sovereign immunity precludes a plaintiff from bringing a *Bivens* action against a federal agency, *See FDIC v. Meyer,* 510 U.S. 471, 484-86 114, --- S.Ct. ----, ---- - ---- ----, --- L.Ed.2d ----, ---- - ---- ----(1994). Suits brought against federal officials in their official capacities are to be treated as suits against the employing government agency. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (cited with approval in *Christy v. Pa. Turnpike Comm'n,* 54 F.3d 1140, 1143 n. 3 (3d Cir.1995)). As a result, a *Bivens* suit brought against an individual federal official acting in his official capacity is barred by the doctrine of sovereign immunity, *See also Chinchello v.*

should be dismissed from this action.  Defendants Hogsten and  Wolmendorf should be dismissed, and Plaintiff should file his claim with respect to his missing property in an FTCA Complaint against the United States after he exhausts his tort claim with the BOP.

Under even the most liberal construction, we find that Plaintiff's present Complaint fails to allege any Fifth Amendment and First Amendment violations by Defendants Wolmendorf and Hogsten.  Even taking into account the fact that Plaintiff is proceeding *pro se*, his Complaint fails to allege sufficient personal involvement of the stated two Defendants in any Fifth Amendment and First Amendment violations.

Plaintiff fails to make a claim showing that Defendants Wolmendorf and Hogsten's alleged conduct violates either the First Amendment or the Fifth Amendment based on the standards discussed above.  Accordingly, we shall recommend that this case be dismissed as to Defendants United Sates, Wolmendorf and Hogsten, and that Plaintiff be directed to file an FTCA action as against the United States.[10]

_____

> *Fenton,* 805 F.2d 126, 130 n. 4 (3d Cir.1986) (affirming district court's conclusion that sovereign immunity barred an official-capacity *Bivens* claim), and the court lacks jurisdiction to hear the claim. *See Kabakjian v. United States,* 267 F.3d 208, 211 (3d Cir.2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity)."

[10]Notwithstanding the Plaintiff's *pro se* status and our finding that his § 1331 claim is insufficient as to Defendants Wolmendorf and Hogsten, we do not recommend that he be permitted to amend his Complaint to include more specific facts against any prison staff, since we find that the Plaintiff's allegations fail to state a constitutional violation under the First Amendment and the Fifth Amendment.  Also, Defendant United States cannot be named in a *Bivens* action.  Thus, we find futility of any amendment of this Complaint, and we shall not

In *Campbell v. Chaves*, 402 F. Supp. 2d 1101 (D. Ariz. 2005), Plaintiff inmate filed a *Bivens* action for damages alleging violation of his Fifth and Fourteenth Amendment rights since Defendant BOP staff members lost some of his property during his transfer from one federal prison to another.  The *Campbell* Court stated, "not all property losses implicate the due Process Clause of the Constitution.  Mere negligence does not amount to a constitutional deprivation." *Id.* at 1102 (citation omitted).  The Court then stated:

> The Constitution requires some kind of a hearing before the State deprives a person of liberty or property. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). When property deprivations are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply impracticable since the State cannot know when such a deprivation will occur. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Even where a state employee intentionally and without authorization deprives a person of his property, the employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *Id.*

*Id.* at 1102-1103.

In *McEachin v. Beard*, 319 F. Supp. 2d 510, 514 (E. D. Pa. 2004), the Court stated:

> [T]he Supreme Court has held that due process is satisfied when the state provides adequate postdeprivation remedies following the destruction of an inmate's personal property. *Hudson v. Palmer*, 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  It is not disputed by the parties that a postdeprivation process in the form of a prison grievance system was in place and made available to plaintiff.

---

recommend Plaintiff be granted leave to amend his pleading.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted).

The *McEachin* Court quoted the *Hudson* case as follows:

> If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state postdeprivation remedies are available.  Accordingly, we hold that an unauthorized intentional deprivation of property does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.  *Id.* at 533, 104 S.Ct. 3194.

*Id.*

The *McEachin* Court concluded as follows:

> To the extent that plaintiff's claim rests on the contention that defendants confiscated his property without a prior hearing, his claims are without merit.  Whether the confiscation was the result of negligent or intentional acts, *Hudson* holds that plaintiff's due process rights are not violated provided that adequate and meaningful postdeprivation process is available.

*Id.*

As with the PA DOC prison grievance system being found by Courts in the Third Circuit to afford inmates with an adequate postdeprivation process with respect to lost property claims, we find that the BOP Administrative remedies provide federal inmates with an adequate postdeprivation process for the return of their lost property, whether it was deliberately thrown away or negligently lost.  *See McEachin, supra* at 515.  Our Plaintiff had due process in the BOP grievance procedure which he admittedly utilized, and has not yet even exhausted.  As the *McEachin* Court stated, simply because Plaintiff inmate had difficulty in having his grievance heard does not show that the prison grievance process was inadequate.  *Id*. at 515.  In fact, our Plaintiff admits that after his grievance, he did receive all of his property back except for his album book and

photos.

Thus, we do not find that Plaintiff has stated a Fifth Amendment due process claim.

We also do not find that Plaintiff states a First Amendment retaliation claim.  As this Court stated

in *Oriakhi v. Wood*, 2006 WL 859543, * 4 (M. D. Pa.),

> A plaintiff alleging retaliation bears the initial burden of showing
> that: (1) he was engaged in a constitutionally protected activity;
> (2) that he suffered an "adverse action" at the hands of prison
> officials; and (3) that his constitutionally protected activity was
> the substantial or motivating factor in the prison officials' decision
> to discipline the plaintiff.  *Mitchell v. Horn*, 318 F.3d 523, 530
> (3d Cir. 2003) (citing *Allah v. Seiverling*, 229 F.3d 220, 225
> (3d Cir. 2000).  The burden then shifts to the defendant to show
> by a preponderance of the evidence that the plaintiff would have
> received the same punishment, or alternatively stated, that
> defendant would have taken the same action, absent the retaliatory
> motive for reasons reasonably related to a legitimate penological
> interest.  *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001).

In our case, Plaintiff seems to claim that prison staff deliberately sent his personal property

to another prison as retaliation for his lawsuits.  Plaintiff states that all of his property was returned

except for his album book and photos, which he claims were intentionally thrown away.  Plaintiff's

filing of a lawsuit is deemed a protected activity under the First Amendment. *Id.* *5.  Thus, Plaintiff

has met the first requirement of a retaliation claim.  However, Plaintiff does not sufficiently state

allegations to meet the second prong, *i.e.* the alleged retaliatory throwing away of his photos and

album book as a result of his lawsuits.  While Plaintiff has suffered harm in the sense that his photos

and album book are gone and he has emotionally suffered from their loss (Doc. 1, p.4), he has not

claimed to have suffered a sufficient adverse action as a result of the retaliatory throwing away of

his belongings.  Simply stated, Plaintiff does not demonstrate that he suffered a sufficient harm as

17

a result of the loss of his property. Plaintiff has the remedy of a tort claim with the BOP and of an

FTCA action with this Court after his administrative remedies are exhausted with respect to his tort

claim. Further, Plaintiff has not sufficiently stated that the filing of his lawsuits was a motivating

factor in the staff's alleged throwing away of his album book and photos.

## VI. Recommendation.

Based on the above, it is respectfully recommended that this case be dismissed as to

Defendants Wolmendorf and Hogsten, as the Plaintiff has failed to state a retaliation claim under

the First Amendment and a due process claim under the Fifth Amendment against these

Defendants. It is recommended that this *Bivens* case be dismissed as against Defendant United

States. It is further recommended that Plaintiff be directed to file an FTCA action against the United

States with respect to his lost property claim after he exhausts his administrative remedies with the

BOP. Finally, we recommend that Plaintiff's *in forma pauperis* applications be granted solely for

the purpose of filing this action.


                              **s/ Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: November 29, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **4:CV-06-2052** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 29, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

19

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                            **s/ Thomas M. Blewitt**
_____    **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**


**Dated: November 29, 2006**